**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHERELL HARRINGTON, DESERAE COOK, and GLORIA LEWIS, individually and on behalf of all persons similarly situated,

*Plaintiffs*,

v.

UPMC and ALLEGHENY COUNTY,

*Defendants*.

Civil Action No. 2:20-cv-00497

Assigned to:
District Judge W. Scott Hardy

*Filed Electronically*

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION
AND APPOINTMENT OF CLASS COUNSEL**

# TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................................... 1

II.   FACTUAL BACKGROUND..................................................................................... 2

III.  ARGUMENT ............................................................................................................. 8

   A.   THE CLASS MEETS ALL OF THE REQUIREMENTS OF RULE 23(A). ........................ 9

      1.   The Class Is So Numerous that Joinder Is Impracticable. .............................. 9

      2.   Members of the Class Have Questions of Law and Fact in Common. ......................... 10

      3.   The Claims of the Named Plaintiffs are Typical of Those of the Class. ...................... 12

      4.   The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class. . 13

   B.   PLAINTIFFS MEET THE REQUIREMENTS OF FEDERAL RULE 23(B) ...................... 14

      1.   Plaintiffs Meet the Requirements of Rule 23(b)(1) ...................................... 15

      2.   Plaintiffs Meet the Requirements of Rule 23(b)(2) ...................................... 16

      3.   Plaintiffs Meet the Requirements of Rule 23(b)(3). ..................................... 17

         a.   Class members are readily ascertainable. ................................................. 17

         b.   The central legal and factual issues in this case predominate over questions affecting individual members.......................................................................................... 19

         c.   A class action is superior to hundreds of individual trials. ....................................... 21

   C. APPOINTMENT OF CLASS COUNSEL ...................................................................... 23

IV.  CONCLUSION ........................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591(1997) .................................................................................................. 16

*Baby Neal v. Casey,*
43 F.3d 48 (3d Cir. 1994) ..................................................... 10, 11, 13, 14, 15, 16

*Barabin v. Aramark Corp.,*
210 F.R.D. 152 (E.D. Pa. 2002) ........................................................................... 13

*Beck v. Maximus, Inc.,*
457 F.3d 291 (3d Cir. 2006) .................................................................................. 12

*Cannon v. Cherry Hill Toyota, Inc.,*
184 F.R.D. 540 (D.N.J. 1999) ................................................................................ 10

*Clarke v. Lane,*
267 F.R.D. 180 (E.D. Pa. 2010) ...................................................................... 12, 17

*Dittimus-Bey v. Taylor,*
244 F.R.D. 284 (D.N.J. 2007) ................................................................................ 10

*Hargrove v. Sleepy's LLC,*
No. 3:10-CV-01138-PGS-LHG, 2022 WL 617176 (D.N.J. Mar. 2, 2022) ................................. 21

*Hassine v. Jeffes,*
846 F.2d 169 (3d Cir. 1988) ............................................................................ 10, 16

*Hayes v. Wal–Mart Stores, Inc.,*
725 F.3d 349 (3d Cir. 2013) .................................................................................. 20

*In re Lamictal Direct Purchaser Antitrust Litig.,*
957 F.3d 184 (3d Cir. 2020) .................................................................................. 20

*In re Modafinil Antitrust Litig.,*
837 F.3d 238 (3d Cir. 2016) .................................................................................. 22

*Johnston v. HBO Film Mgmt., Inc.,*
265 F.3d 178 (3d Cir. 2001) .................................................................................. 12

*Kelly v. RealPage Inc.*,
47 F.4th 202 (3d Cir. 2022) ................................................................................ 17, 18, 19

*Logory v. Cnty. of Susquehanna*,
277 F.R.D. 135 (M.D. Pa. 2011) ....................................................................................... 10

*Markocki v. Old Republic Nat'l Title Ins. Co.*,
254 F.R.D. 242 (E.D. Pa. 2008) ....................................................................................... 16

*Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353 (3d Cir. 2015) ............................................................................................. 21

*New Directions Treatment Servs. v. City of Reading*,
490 F.3d 293 (3d Cir. 2007) ............................................................................................. 13

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ........................................................................................................... 15

*Scott v. Clarke*,
61 F. Supp. 3d. 569 (W.D. Va. 2014) ........................................................................ 11, 13

*Senne v. Kan. City Royals Baseball Corp.*,
934 F.3d 918 (9th Cir. 2019) ............................................................................................ 21

*Sheinberg v. Sorensen*,
606 F.3d 130 (3d Cir. 2010) ............................................................................................. 23

*Shelton v. Bledsoe*,
775 F.3d 554 (3d Cir. 2015) ............................................................................................... 8

*Sourovelis v. City of Phila.*,
320 F.R.D. 12 (E.D. Pa. 2017) ......................................................................................... 16

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) ............................................................................................... 9

*Sullivan v. DB Invs.*,
667 F.3d 273 (3d Cir. 2011) ............................................................................................. 21

*Thomas v. TEKsystems, Inc.*,
No. 2:21-CV-460, 2025 WL 756067 (W.D. Pa. Mar. 10, 2025) ................................... 22

iv

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........................................................................................... 19

*Wal-Mart Stores Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................ 8, 10, 15, 16

*Williams v. City of Phila.*,
270 F.R.D. 208 (E.D. Pa. 2010) .................................................................... 9, 14

**Statutes, Rules, and Regulations**

Fed. R. Civ. P. 23 ...................................................... 2, 13, 15, 16, 17, 21, 23

**Other Authorities**

1 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 3:27 (6TH ED.) ............................................ 11

*2024 Medicaid & CHIP Beneficiaries at a Glance: Maternal Health*, CENTERS FOR MEDICARE &
MEDICAID SERVICES, https://www.medicaid.gov/medicaid/benefits/downloads/2024-maternal-
health-at-a-glance.pdf (May 2024) ...................................................................... 22

7 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 23:33 (6TH ED.) ......................................... 19

7A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1762
(4TH ED. 2024) ............................................................................................. 10

*How ChildLine Protects Children*, PA. DEP'T OF HUM. SERVS.,
https://www.pa.gov/agencies/dhs/resources/keep-kids-safe/resources/childline.html (last
visited Apr. 4, 2025). ......................................................................................... 3

## I.     INTRODUCTION

Plaintiffs Gloria Lewis, Deserae Cook, and Cherell Harrington (Plaintiffs) are women who gave birth to healthy babies at hospitals owned and operated by Defendant UPMC.  By choosing to have their babies at these facilities, the Plaintiffs gave UPMC access to their confidential medical information and trusted that UPMC would not disclose this information without their consent.  None of the Plaintiffs were aware of UPMC's policy requiring UPMC healthcare providers to disclose new mothers' confidential medical information to Pennsylvania's child abuse hotline if the provider believed that a new mother used THC (the primary psychoactive compound found in marijuana) while pregnant—a policy that upended their lives and turned a joyous time into a nightmare.

UPMC's disclosure of the Plaintiffs' confidential health information caused Plaintiffs to be subjected to intrusive home inspections by Allegheny County caseworkers shortly after giving birth. UPMC policy requires its healthcare providers to disclose new mothers' confidential medical information to the state based solely on a THC-positive urine drug test during pregnancy or at delivery, or a patient's disclosure that she used THC during pregnancy.  Allegheny County policy requires caseworkers to fully investigate every ChildLine referral it receives about new mothers alleged to have used THC while pregnant.

Plaintiffs are three of hundreds of patients, all women, whose confidential medical information has been unlawfully disclosed by UPMC to the state. They seek a declaration that UPMC's policy violates class members' rights to privacy under state law and the Fourteenth Amendment to the United States Constitution and an injunction barring UPMC from disclosing a new mother's confidential medical information to government officials when not required by law; a declaration that Allegheny County's policy violates class members' privacy and parental rights under the Fourteenth Amendment and an injunction prohibiting Allegheny County from

1

investigating a new mother based on allegations that the mother used THC while pregnant; and monetary damages for the harm the Plaintiffs suffered as a result of UPMC's and Allegheny County's unlawful actions.

Plaintiffs Lewis, Cook, and Harrington also seek certification of a class of new mothers who, like them, were subjected under the policies of UPMC and Allegheny County to an intrusive investigation based solely on a positive urine sample or self-report of THC use during pregnancy. As demonstrated below, Plaintiffs and the proposed class meet all the requirements of Federal Rule of Civil Procedure 23(a), and Plaintiffs' suit squarely fits the criteria of Federal Rules of Civil Procedure 23(b)(1), 23(b)(2), and 23(b)(3). Accordingly, Plaintiffs' motion should be granted.

## II.     FACTUAL BACKGROUND

The Named Plaintiffs are Gloria Lewis, Deserae Cook, and Cherell Harrington. Each of these women gave birth to a healthy baby at a UPMC hospital in Allegheny County. Second Amended Class Action Complaint ("Compl."), ¶1 (ECF No. 90). Each was nevertheless subjected to an intrusive investigation by the Allegheny County Office of Children, Youth, and Families within days of giving birth because UPMC disclosed to the state that each Plaintiff had a positive urine drug test for THC during pregnancy or at delivery and/or disclosed to her UPMC healthcare provider that she used THC during pregnancy. *Id.* ¶¶2-4. UPMC and Allegheny County took the complained of actions pursuant to policies adopted by each Defendant.

***The UPMC Policy***

Under the UPMC Policy, in place since at least June 2017, UPMC healthcare providers involved in delivery or care of newborns at UPMC hospitals disclose patients' confidential medical information to the Pennsylvania child abuse hotline, known as ChildLine, if the provider believes that a newborn's mother used THC while pregnant, either as a result of a positive urine

2

drug test for THC on the woman and/or her baby or a self-report of THC use.  *See* Exhibit A, Maternal Substance Screening, at 4; Exhibit B, Petticord Dep. 147:1-148:12; Exhibit F, Braden-Rogers Dep. 75:8-23.  No law requires UPMC to notify ChildLine when babies are born to new mothers who test positive for THC while pregnant or at delivery or who self-report using THC during their pregnancy.  *See* Exhibit C, Plans of Safe Care Frequently Asked Questions, at 3; Compl. ¶¶135-36.

UPMC adopted this system-wide policy (UPMC Policy) "to provide the UPMC standard for screening pregnant women for exposure to illegal drugs, drugs, or alcohol that may adversely affect the fetus, newborn, and/or the outcome of the pregnancy when they present to the hospital for observation or admission."  Exhibit A at 1.  Pregnant women who meet UPMC's screening criteria are subjected to a urine drug test.  *Id.*  When a new mother has a positive urine drug test for THC at delivery, or UPMC believes she has used THC during her pregnancy based on prenatal records or self-reported THC use, UPMC social workers submit a report or notification to ChildLine[1] regarding the allegations of prenatal THC use.  *See* Exhibit D, Hadley Dep. 23:18-25:9; Exhibit F, Braden-Rogers Dep. 75:8-23.  UPMC social workers submitted reports or notifications to ChildLine alleging that each Named Plaintiff used THC while pregnant based on a positive urine drug test for THC and/or self-reports of THC use during pregnancy.  Exhibit D, Hadley Dep. at 61:14-62:5; Exhibit E, Hutton Dep. 101:4-16; Exhibit F, Braden-Rogers Dep. 90:18-5; Compl. ¶ 123.  While UPMC typically informs the mother that it will submit the

---

[1] ChildLine is operated by the Pennsylvania Department of Human Services.  ChildLine is part of a mandated statewide child protective services program designed to accept child abuse referrals and general child well-being concerns, and transmit the information quickly to the appropriate investigating agency.  *How ChildLine Protects Children*, PA. DEP'T OF HUM. SERVS., https://www.pa.gov/agencies/dhs/resources/keep-kids-safe/resources/childline.html  (last  visited Apr. 4, 2025).

notification, UPMC does not obtain the women's consent to disclose their confidential medical information to ChildLine.  *See* Compl. ¶¶ 19, 79, 123.

Notifications to ChildLine about newborns whose mothers used substances during pregnancy are categorized as General Protective Services (GPS) referrals.  Exhibit G, Noel Dep. 79:4-17.  GPS referrals by definition do not include allegations of child abuse, in contrast to Child Protective Services referrals, which involve allegations of child abuse.  Exhibit G, Noel Dep. 45:17-47:1.  ChildLine then conveys the GPS referral to the children and youth services office of the county where the baby and mother reside.  Exhibit G, Noel Dep. 73:8-20.

***Allegheny County Policy***

Because GPS referrals do not include allegations of child abuse, Allegheny County Office of Children, Youth, and Families (ACCYF) has discretion to decide how to handle a GPS referral.  *See* Exhibit G, Noel Dep. 58:12-59:16.  ACCYF intake screeners have three options: They can "screen out" the referral, which results in no action being taken; they can "screen in" the referral, which initiates a full investigation; or they can assign a "field screen," which involves a single face-to-face contact with the child.  *See* Exhibit G, Noel Dep. 62:21-63:18, 66:22-69-16.

Under Allegheny County policy (County Policy), ACCYF intake screeners *always* screen in GPS referrals for babies born to women who used THC while pregnant.  Exhibit G, Noel Dep. 101:10-105:10.  Accordingly, ACCYF screened in the GPS referrals regarding Plaintiffs' newborns, which were solely based on UPMC's notifications to ChildLine that the Plaintiffs had a THC-positive urine drug test at delivery and/or self-reported using THC while pregnant. Compl. ¶¶ 2-4.  After being screened in, referrals are assigned to caseworkers, who initiate the investigation.  *See* Exhibit G, Noel Dep. 104:6-23.  Allegheny County investigates all referrals

involving allegations that a newborn's mother used THC while pregnant, even though state law does not require any action.

Allegheny County requires caseworkers to conduct a home inspection for every GPS referral alleging THC use by a new mother during pregnancy. Exhibit H, Walker Dep. 65:25-67:18. As a result, each Plaintiff was subjected to an intrusive search of her home shortly after giving birth. Compl. ¶¶44-46, 92-94, 128-30. This "thorough home inspection," which must be completed at every home visit made to the family home, includes a "physical walk-through of the entire home, including all floors (attic to basement)" to look for the presence and signs of risk/safety factors, including "presence/absence of food, clothing; environmental dangers such as exposed wiring, unsafe staircases; animals; evidence suggesting criminal activity such as drug use; presence of weapons; cleanliness; presence/absence of developmentally appropriate toys/activities for child(ren), etc.; [and] presence of prescription medication and appropriate storage." Exhibit I, Investigative Practice Standards, pp. 9-10. As part of their investigations, caseworkers also required Plaintiffs to sign release of information forms for each of their minor children for the children's schools and doctors, took photographs of Plaintiffs' children, and conducted face-to-face interviews with Plaintiffs' older children outside of the parents' presence. Compl. ¶¶45-46, 56, 94, 129-30.

Plaintiffs' experiences are not unique. Allegheny County has subjected more than 800 other women to these intrusive investigations, based on the nonconsensual disclosure by UPMC of confidential medical information regarding their alleged THC use during pregnancy since March 2018. Exhibit J, Rose Decl. ¶ 14. These women face a future risk of harm if they become

pregnant again and give birth at a UPMC hospital in Allegheny County because UPMC and Allegheny County continue to enforce these unlawful policies.

***The Plaintiffs***

**Gloria Lewis** gave birth to a healthy baby girl on July 14, 2022, at UPMC Magee-Women's Hospital (UPMC Magee). Compl. ¶¶102, 110. Upon admission, UPMC Magee collected a urine sample from Ms. Lewis and tested it for THC. *Id.* ¶103. The urine sample came back "unconfirmed positive" for THC. *Id.* ¶107. While Ms. Lewis was still in the hospital, a UPMC Magee social worker informed Ms. Lewis that the positive drug test would be reported to ChildLine. *Id.* ¶¶113, 115. Ms. Lewis did not consent to the disclosure. *Id.* ¶123. Pursuant to the UPMC Policy, the social worker disclosed Ms. Lewis' confidential medical information to ChildLine, which then provided the information to ACCYF. *Id.* Pursuant to the County Policy, an ACCYF intake screener "screened in" the ChildLine referral for investigation. On July 19, 2022, just two days after Ms. Lewis' discharge from UPMC Magee, two ACCYF caseworkers arrived at Ms. Lewis' home, inspected all the rooms, took photographs of her children, interviewed her then 14- and 16-year-old children, and required her to answer detailed personal questions about her THC use, education, employment, and family and medical histories. *Id.* ¶¶128-30.

**Deserae Cook** gave birth to a healthy baby girl at UPMC Mercy on July 7, 2018. Compl. ¶71, 82. Upon admitting Ms. Cook to the hospital, UPMC Mercy asked Ms. Cook whether she had ever used illegal drugs. *Id.* ¶73. Ms. Cook responded that she had used THC in the past but "quit everything" when she found out she was pregnant. *Id.* UPMC Mercy also collected a urine sample from Ms. Cook and tested it for THC. *Id.* ¶74. The urine sample came back negative for all drugs. *Id.* ¶81. While Ms. Cook was still in the hospital, a UPMC Mercy social worker

informed Ms. Cook that her self-reported history of THC use would be reported to ChildLine.
*Id.* ¶86.  Ms. Cook did not consent to the disclosure.  *Id.* ¶79.  Pursuant to the UPMC Policy, the
social worker disclosed Ms. Cook's confidential medical information to ChildLine, which then
provided the information to ACCYF.  Pursuant to the County Policy, an ACCYF intake screener
"screened in" the ChildLine referral for investigation.  On July 24, 2018, an ACCYF caseworker
arrived at Ms. Cook's home, inspected all the rooms, and required Ms. Cook and her children's
father to answer detailed personal questions about their education, employment, and family and
medical histories.  *Id.* ¶94.

     **Cherell Harrington** gave birth to a healthy baby boy at UPMC Magee on November 29,
2017.  Compl. ¶13, 25.  Upon admitting Ms. Harrington to the hospital, UPMC Magee collected
a urine sample from Ms. Harrington and tested it for THC.  *Id.* ¶15.  The urine sample came back
"unconfirmed positive" for THC.  While Ms. Harrington was still in the hospital, a UPMC
Magee social worker informed Ms. Harrington that the positive drug test would be reported to
ChildLine.  *Id.* ¶21.  Ms. Harrington did not consent to the disclosure.  *Id.* ¶19.  Pursuant to the
UPMC Policy, the social worker disclosed Ms. Harrington's confidential medical information to
ChildLine, which then provided the information to ACCYF.  *Id.* ¶33.  Pursuant to the County
Policy, an ACCYF intake screener "screened in" the ChildLine referral for investigation.  On
December 1, 2017, a male ACCYF caseworker entered her private hospital room to inform her
that ACCYF was investigating her due to the ChildLine referral and to obtain releases of
information for herself and her baby.  *Id.* ¶¶37-39.  Three days later, on December 4, 2017, the
ACCYF caseworker arrived at Ms. Harrington's home, inspected all the rooms, took
photographs of her children, and required her and her husband to answer detailed personal
questions about their education, employment, and family and medical histories.  *Id.* ¶44-46.  The

7

caseworker informed Ms. Harrington that ACCYF required her to complete a drug counseling assessment. *Id.* ¶47. If she did not complete the assessment, ACCYF would report her failure to cooperate to a judge, and she would be required to travel to downtown Pittsburgh for monthly drug tests. *Id.* ¶49. The caseworker required Ms. Harrington to sign releases of information for her 11-year-old daughter's pediatrician, dentist, and school. *Id.* ¶56.

***The Proposed Class***

Plaintiffs propose to represent themselves and a class of consisting of:

Women who gave birth at a UPMC facility in Allegheny County on or after March 11, 2018, and all named plaintiffs in this action, whose medical information was disclosed by UPMC and/or its subsidiaries to ChildLine based solely on a positive urine drug test for THC during pregnancy or at delivery or self-reported THC use while pregnant, and who were subjected to a General Protective Services investigation by the Allegheny County Office of Children, Youth and Families on the basis of UPMC's disclosure.[2]

## III.   ARGUMENT

To obtain class certification, Plaintiffs must establish by a preponderance of the evidence the four elements of Federal Rule of Civil Procedure 23(a) and at least one provision of Rule 23(b). *Shelton v. Bledsoe*, 775 F.3d 554, 562 (3d Cir. 2015); *see also Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338 (2011). Plaintiffs meet all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(1), (b)(2), and (b)(3). Accordingly, the Court should grant Plaintiffs' Motion for Class Certification.

---

[2] The class is defined to include Plaintiff Cherell Harrington, who gave birth at UPMC Magee on November 29, 2017. The class complaint was filed in Allegheny County Court of Common Pleas on March 13, 2020, and subsequently removed to federal court. Although Ms. Harrington's claims would ordinarily be time-barred, she filed a writ of summons on November 25, 2019, to toll the statute of limitations on her state-law and 42 U.S.C. § 1983 claims. If the Court determines that the inclusion of Ms. Harrington in the class definition would defeat class certification, then Plaintiffs respectfully request that the Court define the class to exclude her and allow her to pursue her claims on an individual basis.

### A.    The Class Meets All of the Requirements of Rule 23(a).

Under Rule 23(a), Plaintiffs must show that:

    (1)    the class is so numerous that joinder of all members is impracticable,

    (2)    there are questions of law or fact common to the class,

    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

    (4)    the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs' proposed class of more than 500 women easily meets the numerosity requirement of Rule 23(a)(1).  In addition, Plaintiffs satisfy the requirements of Rule 23(a)(2) and (a)(3) because this case involves policies adopted by Defendants that were applied to Plaintiffs and proposed class members without regard to their individual circumstances.  Finally, Plaintiffs satisfy the requirements of Rule 23(a)(4) because they will fairly and adequately protect the interests of the class.

### 1.    The Class Is So Numerous that Joinder Is Impracticable.

The proposed class includes more than 800 women who were subjected to intrusive investigations by Allegheny County based on UPMC's nonconsensual disclosure of confidential medical information regarding THC use during pregnancy.  Exhibit J, Rose Decl. ¶ 14.  The class thus satisfies the numerosity requirement of Rule 23(a)(1) because joinder of so many individual plaintiffs would be unworkable.  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham,* 275 F.3d 220, 226–27 (3d Cir. 2001);  *accord Williams v. City of Phila.*, 270 F.R.D. 208, 214–15 (E.D. Pa. 2010) ("[C]ourts in this circuit have generally found that a class of 40 or more plaintiffs satisfies the numerosity requirement."); *Dittimus-Bey v. Taylor*, 244 F.R.D. 284, 290 (D.N.J. 2007)

(same).  The proposed class exceeds that number by an order of ten, so the class easily satisfies the numerosity requirement.

Impracticability of joinder does not mean impossibility, only that joinder would be difficult.  *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 543 (D.N.J. 1999) ("[Under Rule 23(a)(1)], [t]he plaintiff need not precisely enumerate the potential size of the proposed class, nor is the plaintiff required to demonstrate that joinder would be impossible."); *see also* 7A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1762 (4TH ED. 2024) ("'Impracticable' does not mean 'impossible.'  The representatives only need to show that it is extremely difficult or inconvenient to join all the members of the class.").  The sheer number of women harmed by the UPMC and Allegheny County Policies demonstrates the difficulty and inefficiency of joining all the members of the proposed class.

### 2. Members of the Class Have Questions of Law and Fact in Common.

The proposed class meets the commonality requirement of Rule 23(a)(2), which "does not require that the representative plaintiff ha[s] endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be *common* to the class." *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988).  Class members' claims are common if there is a "common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350; *Logory v. Cnty. of Susquehanna*, 277 F.R.D. 135, 141 (M.D. Pa. 2011) (noting commonality is not determined by the existence of classwide questions, "but instead the potential for a 'classwide resolution.'").

Even one common issue will satisfy Rule 23(a)(2).  *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also Wal-Mart Stores*, 564 U.S. at 359 (noting a "single common question will do") (internal punctuation omitted).  "Because the requirement may be satisfied by a single

common issue, it is easily met." *Baby Neal*, 43 F.3d at 56; s*ee also Scott v. Clarke*, 61 F. Supp. 3d. 569, 586 (W.D. Va. 2014) ("While the claims of the class members must arise from similar practices and be based on the same legal theory, the commonality requirement does not require that all class members share identical factual histories."); 1 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 3:27 (6TH ED.).

This litigation presents common questions of fact with respect to (1) the UPMC Policy of disclosing a new mother's confidential medical information to ChildLine when the new mother is suspected of using THC during pregnancy; (2) the nature of UPMC and Allegheny County's agreement to screen women for THC use at delivery and disclose their confidential medical information to the state; and (3) the County Policy of screening in and investigating all GPS referrals from ChildLine regarding babies born to women suspected of using THC during pregnancy.

This litigation also presents common questions of law as to (1) whether the UPMC Policy of disclosing a new mother's confidential medical information to ChildLine when it believes she used THC during pregnancy constitutes a breach of doctor-patient confidentiality under Pennsylvania law; (2) whether UPMC engaged in state action by coordinating with Allegheny County to violate its patients' privacy and parental rights under the Fourteenth Amendment to the United States Constitution; (3) whether Allegheny County violated women's Fourteenth Amendment privacy rights when it relied on patients' confidential medical information to initiate investigations into women alleged to have used THC during pregnancy; and (4) whether the County Policy of subjecting women who used THC during pregnancy to GPS investigations violated their Fourteenth Amendment parental rights.

Commonality thus is established.  The proposed class members are women who gave

birth at UPMC hospitals in Allegheny County whose private medical information was disclosed,

pursuant to UPMC policy, to the state for the purpose of furthering Allegheny County's policy of

investigating new mothers alleged to have used THC during pregnancy.  Each of the class

members was harmed by the UPMC Policy of disclosing new mothers' THC use during

pregnancy to the state.  Each was also harmed by the County Policy of conducting intrusive GPS

investigations every time ACCYF receives a GPS referral alleging that a newborn's mother used

THC while pregnant.  Because these Policies are still in effect, each class member faces the same

harms if she gives birth at a UPMC hospital in Allegheny County in the future.  *All* of them

suffered common harms as a result of the UPMC and County Policies. The proposed class thus

meets Rule 23(a)(2)'s commonality requirement.

### 3.    The Claims of the Named Plaintiffs are Typical of Those of the Class.

Typicality asks "whether the named plaintiffs' claims are typical, in common-sense

terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of

the class."  *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006); *Clarke v. Lane*, 267

F.R.D. 180, 197 (E.D. Pa. 2010) (finding typicality met when all putative class members suffered

"constitutional violations under a uniform system").  For class representatives' claims to be

typical, they do not need to be identical to the claims of the class members.  *Johnston v. HBO*

*Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).  Factual differences will not render a claim

atypical, so long as the claims of the named plaintiffs and proposed class members arise from the

same practice or course of conduct by the defendants and the class members' claims are based on

the same legal theory.  *Clarke*, 267 F.R.D. at 197 (citing *Beck*, 457 F.3d at 295-96).  "[E]ven

relatively pronounced factual differences will generally not preclude a finding of typicality

where there is a strong similarity of legal theories." *Baby Neal*, 43 F.3d at 58; *see Scott*, 61

F. Supp. 3d at 588-89.

Plaintiffs are challenging the UPMC and County Policies that caused UPMC to disclose

Plaintiffs' private medical information to the County for the purpose of investigating women

who used THC while pregnant. Because Plaintiffs' claims arise out of these Policies and the

Policies apply to all class members, the Plaintiffs' claims are typical of the class. *See Barabin v.*

*Aramark Corp.*, 210 F.R.D. 152, 159 (E.D. Pa. 2002) ("Where an action challenges a policy or

practice, the named plaintiffs suffering one specific injury from the practice can represent a class

suffering other injuries so long as all the injuries are shown to result from the practice."), *aff'd*,

No. 02-8057, 2003 WL 355417 (3d Cir. Jan. 24, 2003). Moreover, the harms to Plaintiffs and

other class members under these policies are the same: Each woman's confidential medical

information was disclosed to the state without her consent and each woman was subjected to a

GPS investigation by Allegheny County shortly after giving birth. Plaintiffs' claims are

therefore typical within the meaning of Rule 23(a)(3).

### 4. The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

The proposed class meets the final requirement of Rule 23(a), which is that the named

plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

The adequacy inquiry has two components: (1) whether the attorneys retained by the named

plaintiffs are qualified, experienced, and generally able to conduct the litigation; and (2) whether

the named plaintiffs have interests that are antagonistic to or in conflict with those they seek to

represent. *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir.

2007).

First, Plaintiffs' attorneys are qualified and experienced in conducting class action litigation. This prong is addressed fully in Section IIIC, below.

Second, Plaintiffs' interests align with the interests of the proposed class as a whole. Plaintiffs do not have any interests antagonistic to those of any other member of the proposed class. Antagonism may exist between the named plaintiff and other class members when a unique defense could be asserted against a named plaintiff that would distract from the class claims or defenses. *See Williams*, 270 F.R.D. at 216 (finding that the named plaintiffs "fairly and adequately protect the interests of the class" because, in part, there are no "unique defenses that would consume a disproportionate amount of time and attention"). No such circumstances are present here. On the contrary, the Plaintiffs' interests coincide with those of the proposed class to seek (1) a declaration that the UPMC and County Policies are unconstitutional, and (2) a permanent injunction prohibiting Defendants from applying those policies to Plaintiffs, class members, and future new mothers. The relief Plaintiffs seek would benefit all class members and would not impair any future class member's claims. Further, Ms. Harrington, Ms. Cook, and Ms. Lewis have actively participated in the litigation to date, providing documents and information for discovery responses and testifying at depositions. Exhibit J, Rose Decl. ¶ 7. They will fairly and properly represent the Class. Accordingly, the proposed class meets Rule 23(a)(4)'s adequacy requirement.

### B. Plaintiffs Meet the Requirements of Federal Rule 23(b)

"[I]n addition to satisfying the requirements of Rule 23(a), a putative class must also comply with one of the parts of subsection (b)." *Baby Neal*, 43 F.3d at 55-56. With respect to their claims for declaratory and injunctive relief, the proposed class meets the requirements of Rule 23(b)(1) and 23(b)(2) because they are seeking to enjoin policies of the Defendants that

apply equally to all class members. *See, e.g., Baby Neal*, 43 F.3d at 58–59. With respect to

their claims for compensatory damages, the proposed class satisfies the requirements of Rule

23(b)(3) because (1) the questions of law and fact common to class members predominate over

any questions affecting only individual members, and (2) a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P.

23(b)(3).

### 1.    Plaintiffs Meet the Requirements of Rule 23(b)(1)

Rule 23(b)(1) permits a class action if prosecuting separate actions by or against

individual class members would create one of two risks. The first is where separate actions

"would create a risk of 'establish[ing] incompatible standards of conduct for the party opposing

the class.'" *Wal-Mart Stores*, 564 U.S. at 361 n.11 (quoting *Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 614 (1997)). The second is where individual adjudications "as a practical matter,

would be dispositive of the interests of the other members not parties to the individual

adjudications or would substantially impair or impede their ability to protect their interests."

Rule 23(b)(1)(B). Both prongs of Rule 23(b)(1) rest on the same underlying rationale: "Classes

certified under [Rule 23](b)(1) . . . share the most traditional justifications for class treatment –

that individual adjudications would be impossible or unworkable." *Wal-Mart Stores*, 564 U.S. at

361. Where "the shared character of rights claimed or relief awarded entails that any individual

adjudication by a class member disposes of, or substantially affects, the interests of absent class

members," Rule 23(b)(1) certification is appropriate. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815,

834 (1999).

Plaintiffs are challenging Defendants' Policies that have violated Plaintiffs' rights and the

rights of hundreds of similarly situated women. Individual prosecutions of these actions would

create a risk of inconsistent verdicts, causing confusion as to whether Defendants can continue to

enforce the challenged policies.  *See Amchem*, 521 U.S. at 614.  Accordingly, certification is necessary to avoid court decisions with conflicting interpretations of the lawfulness of UPMC's and Allegheny County's Policies.

**2.      Plaintiffs Meet the Requirements of Rule 23(b)(2)**

Rule 23(b)(2) provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  This requirement means that "the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment in the subsequent application of principles of *res judicata*."  *Hassine*, 846 F.2d at 179.  The key to the 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Wal-Mart Stores*, 564 U.S. at 360 (citation omitted).

Plaintiffs seek a declaration that the UPMC Policy violates new mothers' privacy rights under state and federal law and an order enjoining the UPMC Policy.  Plaintiffs also seek a declaration that the County Policy violates new mothers' privacy and parental rights under the Fourteenth Amendment and an order enjoining the County Policy.  These are "classic examples of the types of claims that should be certified under Rule 23(b)(2)."  *Sourovelis v. City of Phila.*, 320 F.R.D. 12, 25 (E.D. Pa. 2017); *see Baby Neal*, 43 F.3d at 58–59 (noting that "[i]t is the (b)(2) class which serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment").  Plaintiffs' and class members' claims are so inherently intertwined that injunctive and declaratory relief as to any would be injunctive and

16

declaratory relief to all.  *Clarke*, 267 F.R.D. at 198.  Thus, Plaintiffs meet the requirements of Rule 23(b)(2).

### 3.    Plaintiffs Meet the Requirements of Rule 23(b)(3).

Under Rule 23(b)(3), Plaintiffs must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "In considering whether to certify a class, a court must perform a two-pronged 'rigorous analysis' to determine whether ascertainability and Rule 23(b)(3)'s requirements are satisfied."  *Kelly v. RealPage Inc.*, 47 F.4th 202, 222 (3d Cir. 2022). Plaintiffs meet the criteria for certifying a Rule 23(b)(3) class because (1) the identities of class members are readily ascertainable, (2) the central legal and factual issues in this case stem from Defendants' Policies that were applied in the same manner to each class member, and (3) a class action is superior to individual lawsuits brought by hundreds of women in which the Court would have to determine Defendants' liability for the violation of the women's constitutional rights.

#### a.  *Class members are readily ascertainable.*

Plaintiffs satisfy the ascertainability requirement because they define the class with reference to objective criteria and identify a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.  *Kelly*, 47 F.4th at 222.

The class definition contains objective criteria for determining who is a member of the class.  Allegheny County maintains records containing the information provided by UPMC social workers to ChildLine regarding the reason for every notification.  Exhibit J, Rose Decl. ¶¶ 8-9.  If the referral results from a THC-positive urine drug test on the baby and/or its mother or

17

the mother's self-reported THC use during pregnancy, it says so. *Id.* at ¶ 9. If there are any additional reasons for the notification, those are also listed. *Id.* Allegheny County's records also reflect whether ACCYF opened a GPS investigation based on the referral. *Id.* Membership in the class is thus based on objective criteria that UPMC and Allegheny County use, pursuant to their policies, to determine whether to submit a ChildLine notification or open an investigation, respectively.

Allegheny County's records provide a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. *See Kelly*, 47 F.4th at 224 (ascertainability requirement satisfied where plaintiffs "identified the records they require, demonstrated they are in [defendant]'s possession, and explained how those records can be used to verify putative subclass members). The County produced a spreadsheet containing every ChildLine referral the County received from UPMC birthing hospitals related to substance use between November 2017 and September 2024. Exhibit J, Rose Decl. ¶ 8. Each ChildLine referral is assigned a unique ID that is associated with the mother's name. *Id.* ¶ 9. For each referral, there is data indicating the date on which it was made, whether Allegheny County opened an investigation, and a narrative section that describes the basis for the referral. *Id.*

Determining which of the more than 1600 referrals contained in the spreadsheet meet the class definition can be accomplished by filtering the spreadsheet entries to include only those referrals on or after March 11, 2018, in which Allegheny County opened an investigation and then reviewing the "maltreatment narrative" column to determine the reason for the ChildLine notification. *Id.* ¶¶ 11-12. The maltreatment narrative for each referral indicates all substances that the mother tested positive for, whether the baby tested positive for any substances, and any other concerns the healthcare provider had about the mother or her baby that are relevant to the

referral.  *Id.* ¶ 12.  If THC use during pregnancy, either as a result of a positive urine drug test or self-report, is the only concern described in the referral, then the woman would be a member of the class.  If the referral lists any reason other than a new mother's alleged THC use during pregnancy for making the referral, then the new mother would be excluded from the class.

The County has records containing all the information needed to identify class members, and the County has demonstrated its capacity to produce this information in the form of a spreadsheet, making it easy to filter out individuals who do not meet the objective criteria contained in the class definition.  Although there is still some level of inquiry needed to determine whether the information included in the "maltreatment narrative" meets the criteria, "[t]here will always be some level of inquiry required to verify that a person is a member of a class. . . .  Such a process of identification does not require a 'mini-trial,' nor does it amount to 'individualized fact-finding.'"  *Kelly*, 47 F.4th at 225 (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013)).  Accordingly, Plaintiffs satisfy the ascertainability requirement.

    *b. The central legal and factual issues in this case predominate over questions affecting individual members.*

When one or more of the central issues in an action are common to the class and can be said to predominate, the action may be considered proper for class certification even though other important matters will have to be tried separately, such as damages.  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016); *see* 7 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 23:33 (6TH ED.) ("it is black letter law that individualized damage calculations do not render common liability issues non-predominant").  The central factual issues in this case—relating to the UPMC Policy of disclosing a new mother's confidential medical information to ChildLine when the new mother is suspected of using THC during pregnancy; the nature of UPMC and Allegheny County's agreement to screen women for THC use at delivery and disclose their confidential

medical information to the state; and the County Policy of screening in and investigating all GPS referrals from ChildLine regarding babies born to women suspected of using THC during pregnancy— are common to the class and predominate over any questions affecting only individual members.  The same is true for the central legal issues, which include whether the UPMC Policy of disclosing a new mother's confidential medical information to ChildLine when it believes she used THC during pregnancy constitutes a breach of doctor-patient confidentiality under Pennsylvania law; whether UPMC engaged in state action by coordinating with Allegheny County to violate its patients' privacy and parental rights under the Fourteenth Amendment to the United States Constitution; whether Allegheny County violated women's Fourteenth Amendment privacy rights when it relied on patients' confidential medical information to initiate investigations into women alleged to have used THC during pregnancy; and whether the County Policy of subjecting women who used THC during pregnancy to general protective services investigations violated their Fourteenth Amendment parental rights.

The factual and legal issues that must be decided to determine liability thus dominate over any individual damages-related issues.  Because UPMC and Allegheny County applied their policies to the class members in a blanket manner without any consideration of the class members' individual circumstances, the "essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." *Hayes v. Wal–Mart Stores, Inc.*, 725 F.3d 349, 359 (3d Cir. 2013); *see In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 191 (3d Cir. 2020) (to meet predominance requirement, it suffices to show "that the plaintiffs' claims are capable of common proof at trial").  The only issues the Court must decide to determine liability stem from the actions of the Defendants, not the Plaintiffs.  The Defendants' alleged wrongs—UPMC disclosing confidential medical information without

patients' consent to the government, and Allegheny County using that information to conduct unnecessary and intrusive GPS investigations—were "common as to all of the class members" and harmed them all. *Sullivan v. DB Invs.*, 667 F.3d 273, 298 (3d Cir. 2011). Common policies like Defendants' "carry great weight for certification purposes," and "predominance is rarely defeated in cases where such uniform policies exist." *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 944 (9th Cir. 2019) (cleaned up).

### c. A class action is superior to hundreds of individual trials.

Plaintiffs must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Substituting a single class action for numerous trials in a matter involving substantial common legal and factual issues susceptible to generalized proof will achieve significant economies of "time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Sullivan*, 667 F.3d at 297; *see also Hargrove v. Sleepy's LLC*, No. 3:10-CV-01138-PGS-LHG, 2022 WL 617176, at *12 (D.N.J. Mar. 2, 2022), *aff'd*, No. 22-2040, 2023 WL 3943738 (3d Cir. June 12, 2023). The proposed class members each have the same legal claims based on the application of Defendants' policies to them, and adjudicating liability for these claims in a single class action is more efficient than holding hundreds of trials, deciding liability for each class member's claims against Defendants. *Hargrove,* 2022 WL 617176 at *12. (noting that any issue determining damages does not defeat superiority of a class action as to liability where "proposed class members each have the same legal claims based on very similar sets of facts"); *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 374–75 n. 10 (3d Cir. 2015) (collecting cases) (inability to calculate damages on classwide basis will not, on its own, bar certification).

Litigating this case in the form of a class action not only "spares the Court the burden of having to decide hundreds of sufficiently similar individual actions," *Thomas v. TEKsystems, Inc.*, No. 2:21-CV-460, 2025 WL 756067, at *12 (W.D. Pa. Mar. 10, 2025), but it also "further[s] the broader class action goal of providing those with small claims reasonable access to a judicial forum for the resolution of those claims." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 254 (3d Cir. 2016). The Defendants are a large health care system and the Commonwealth's second-largest county. The proposed class members are women with limited financial means[3] who are caring for young children. *See Thomas*, 2025 WL 756067, at *12 ("many class members may not have the financial resources needed to join the litigation as individual plaintiffs"). Each woman's individual stake in the litigation is fairly small, especially when compared to the complexity of the litigation, which has involved thousands of pages of documents and more than a dozen depositions of defense witnesses over the course of three years. In addition, the allegations involve sensitive matters related to allegations about substance use during pregnancy and child welfare investigations, deterring women from identifying themselves as opt-in or named plaintiffs for fear of public embarrassment or fear of retaliation by Allegheny County. *See Thomas*, 2025 WL 756067 at *12 (recognizing that even if there is no evidence that defendant retaliated against any plaintiff, individuals may be loath to identify themselves for fear of retaliation).

---

[3] More than one out of every four Medicaid and Children's Health Insurance Program (CHIP) beneficiaries are females in their reproductive years (ages 15–49), and Medicaid finances about 41% of all births in the United States. *2024 Medicaid & CHIP Beneficiaries at a Glance: Maternal Health*, CENTERS FOR MEDICARE & MEDICAID SERVICES, https://www.medicaid.gov/medicaid/benefits/downloads/2024-maternal-health-at-a-glance.pdf (May 2024).

A single trial of the Plaintiffs' case will resolve the liability issues for all class members, resulting in significant economies of time, effort, and expense and promise uniformity of decision, thus satisfying the requirement of superiority.

### C. Appointment of Class Counsel

Rule 23(g) governs the appointment of class counsel and requires the Court to consider:

the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action, counsel's knowledge of the applicable law, and the resources that counsel will commit to representing the class.

*Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010) (cleaned up) (citing Fed. R. Civ. P. 23(g)(1)).

Plaintiffs' counsel includes two experienced lawyers from the ACLU of Pennsylvania (ACLU-PA), Sara Rose and Richard Ting.  *See* Exhibit J.  Ms. Rose has previously represented plaintiffs in federal court class action litigation and has more than twenty years of experience as a civil-rights litigator.  Plaintiffs are also counseled by Margaret Coleman from O'Brien, Coleman & Wright, a law firm that regularly represents plaintiffs in civil rights cases.  *See* Exhibit J.  Moreover, Ms. Rose and Ms. Coleman have each represented women in prior cases involving hospital disclosure of women's private medical information on the basis of drug test results.  The ACLU-PA and O'Brien, Coleman & Wright have performed extensive work on this case in identifying and investigating the claims, drafting the allegations of the complaint, successfully opposing motions to dismiss, consulting with expert witnesses, and pursuing discovery of evidence supporting Plaintiffs' claims.  They will continue to commit the necessary resources to represent the interests of the class.

Given Plaintiffs' counsel's diligence in prosecuting this case to date, their work identifying and investigating potential claims, their knowledge of the applicable law,

their resources to represent the class, and the experience of counsel in handling civil-rights class-actions, this Court should appoint Sara Rose and Richard Ting of the ACLU-PA and Margaret Coleman of O'Brien Coleman & Wright as class counsel.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court certify this class action, permit the Named Plaintiffs to represent the class, and appoint the undersigned as counsel to the class.


Dated:  April 4, 2025                    Respectfully submitted,

*/s/ Sara J. Rose*
Sara J. Rose
Pa. ID No. 204936
Richard T Ting
Pa. ID No. 200438)
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
(412) 681-7736


Margaret S. Coleman
Pa. ID No. 200975
O'Brien Coleman & Wright, LLC
116 Boulevard of the Allies
Pittsburgh, PA  15222
(412) 232-4400

**Counsel for Plaintiffs**